```
------------------------------x
                              :
DOUGLAS R. BUDNICK            :      Civ. No. 3:17CV01546(SALM)
                              :
v.                            :
                              :
COMMISSIONER OF               :      September 6, 2018
SOCIAL SECURITY               :
                              :
------------------------------x
```

## RULING ON CROSS MOTIONS

The plaintiff, Douglas R. Budnick, brings this appeal pursuant to §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Plaintiff has moved for an order reversing the decision of the Commissioner, or in the alternative, for remand. [Doc. #21]. Defendant has filed a motion for an order affirming the decision of the Commissioner. [Doc. #23]. For the reasons set forth below, plaintiff's Motion for Reversal or Remand of Commissioner's Decision is **GRANTED**, to the extent plaintiff seeks a remand for further administrative proceedings. **[Doc. #21].** Defendant's Motion for an Order Affirming the Commissioner's Decision is **DENIED. [Doc. #23].**

# I.  **PROCEDURAL HISTORY**[1]

On August 23, 2011, plaintiff filed an application for DIB, alleging disability beginning on September 11, 2006. See Certified Transcript of the Administrative Record, compiled on October 20, 2017 (hereinafter "Tr.") 291-94. Plaintiff's date last insured was March 31, 2007. See Doc. #19 at 2; Tr. 314. Plaintiff's application for DIB was denied initially on October 6, 2011, see Tr. 160-62, and upon reconsideration on December 6, 2011, see Tr. 167-69. Plaintiff was self-represented throughout that process.

On January 7, 2013, plaintiff, represented by Attorney John Maxwell, appeared and testified at a hearing before Administrative Law Judge Kimberly L. Schiro ("ALJ Schiro"). See Tr. 75-115. A vocational expert ("VE"), Courtney Olds, also appeared and testified at the hearing. See Tr. 105-12. On February 19, 2013, the ALJ issued a decision ("ALJ Schiro's Decision") finding that plaintiff "was disabled under sections 216(i) and 223(d) of the Social Security Act, from September 11, 2006 through November 19, 2009." Tr. 149. Plaintiff filed a Request for Review of Hearing Decision. See Tr. 217.

---

[1] The parties filed a joint Stipulation of Facts on February 12, 2018. See Doc. #19.

On April 24, 2014, the Appeals Council "vacat[ed] the hearing decision and remand[ed] th[e] case to an Administrative Law Judge[.]" Tr. 156. The Appeals Council determined that the "hearing decision does not contain an adequate evaluation of the opinions of the State Agency medical consultants" and that "further evaluation of the medical evidence of record dated on or before March 31, 2007 is warranted." Tr. 156-57. The Appeals Council further found that the "record is unclear regarding whether or not the claimant is entitled to benefits[,]" because "the Administrative Law Judge found that the claimant's disability ended in November 2009, several months before the 12-month period of the month claimant applied for benefits." Tr. 157. The Appeals Council directed the Administrative Law Judge, on remand, to: "Obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairment[;]" "Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations[;]" and "Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base[.]" Tr. 157.

On December 9, 2014, plaintiff, again represented by Attorney Maxwell, appeared and testified at a hearing before ALJ Ryan A. Alger ("ALJ Alger"). See Tr. 27-74. A VE, Renee Jubrey,

3

and a lay witness, Cheyenne Ramos, also appeared and testified at the hearing. See Tr. 60-73. On February 12, 2015, ALJ Alger issued a decision ("ALJ Alger's Decision") finding that plaintiff "was not disabled under sections 216(i) and 223(d) of the Social Security Act through March 31, 2007, the last date insured." Tr. 19. Plaintiff filed a Request for Review of Hearing Decision. See Tr. 286-88. On July 19, 2017, the Appeals Council denied plaintiff's request for review, thereby making ALJ Alger's Decision the final decision of the Commissioner. See Tr. 1-7. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff filed this timely action for review and now moves to reverse and/or remand the Commissioner's decision. [Doc. #21]. On appeal, plaintiff asserts that the ALJ made various errors that prevented him from receiving a full and fair hearing. See generally id.

## II. **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Second, the court must decide whether the determination is supported by substantial evidence. See id. Substantial evidence is evidence that a reasonable mind would

4

accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial

evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988). It is well established that "an ALJ's credibility determination is generally entitled to deference on appeal." <u>Selian v. Astrue</u>, 708 F.3d 409, 420 (2d Cir. 2013); <u>see</u> <u>also</u> <u>Kessler v. Colvin</u>, 48 F. Supp. 3d 578, 595 (S.D.N.Y. 2014) ("A federal court must afford great deference to the ALJ's credibility finding, since the ALJ had the opportunity to observe the claimant's demeanor while the claimant was testifying." (citation and internal quotation marks omitted)); <u>Pietrunti v. Dir., Office of Workers' Comp. Programs</u>, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." (citation and internal quotation marks omitted)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir.

2012). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do [her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental

ability to do basic work activities[]" to be considered

"severe").[2]

There is a familiar five-step analysis used to determine if

a person is disabled. See 20 C.F.R. §404.1520. In the Second

Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits [her] physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's

---

[2] Throughout this decision, and unless otherwise specifically
noted, the Court applies and references the versions of those
Regulations that were in effect at the time of the ALJ's
decision. See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d
Cir. 2012) (applying and referencing version of regulation in
effect when ALJ adjudicated plaintiff's claim); see also Alvarez
v. Comm'r of Soc. Sec., No. 14CV3542(MKB), 2015 WL 5657389, at
*11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the
ALJ's decision in light of the regulation in effect at the time
of the decision." (citing Lowry, 474 F. App'x at 805 n.2)).

severe impairment, he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" ("RFC") is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the

fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV.  **ALJ ALGER'S DECISION**[3]

Following the above-described five-step evaluation process, ALJ Alger concluded that plaintiff was not disabled under the Act. See Tr. 19. First, ALJ Alger determined that plaintiff "last met the insured status requirements of the Social Security Act on March 31, 2007." Tr. 13. ALJ Alger then turned to Step One of the evaluation process and found that plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of September 11, 2006 through his date last insured of March 31, 2007[.]" Id.

At Step Two, ALJ Alger found that plaintiff had two severe impairments: "degenerative disc disease status post discectomy and fusion, radiculopathy[.]" Id. ALJ Alger found that plaintiff's "alleged shoulder and knee impairments" were not "medically determinable." Tr. 14.

---

[3] ALJ Schiro's Decision was vacated by the Appeals Council. See Tr. 156. Therefore, the Court reviews only ALJ Alger's decision herein. See Thompson v. Astrue, 583 F. Supp. 2d 472, 476 (S.D.N.Y. 2008) ("The ALJ's first decision was vacated by the Appeals Council when it remanded [plaintiff's] case to the ALJ for a new hearing. It is thus no longer in effect and cannot be reviewed." (citations omitted)).

At Step Three, ALJ Alger found that plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 14. ALJ Alger stated that "Listing 1.04 Disorders of the spine was especially considered." Id.

Before proceeding to Step Four, ALJ Alger determined plaintiff's RFC. He found that plaintiff had the RFC "to perform sedentary work as defined in except that he requires the ability to alternate between sitting and standing throughout the day, remaining in one position no more than thirty minutes at one time[.]" Tr. at 14 (sic).

With these limitations, ALJ Alger found at Step Four that plaintiff was "unable to perform any past relevant work[.]" Tr. 17. Proceeding to Step Five, however, ALJ Alger found that plaintiff "had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy[.]" Tr. 18.

Therefore, ALJ Alger found that plaintiff was not disabled within the meaning of the Act "at any time from September 11, 2006, the alleged onset date, through March 31, 2007, the date last insured[.]" Tr. 19.

## V.   **DISCUSSION**

On appeal, plaintiff asserts that ALJ Alger erred in five respects, specifically by:

1. Failing to give proper weight to the opinions of plaintiff's treating physicians;

2. Failing to properly evaluate the credibility of plaintiff's testimony regarding the severity of his symptoms;

3. Failing to properly evaluate plaintiff's RFC;

4. Relying on VE testimony; and

5. Failing to properly apply the Medical Vocational Guidelines.

For the reasons set forth below, the Court finds that ALJ Alger erred in his application of the treating physician rule. In light of this finding, the Court need not reach the merits of plaintiff's remaining arguments.

Plaintiff was treated by both Dr. Gerald J. Becker ("Dr. Becker") and Dr. William H. Druckemiller ("Dr. Druckemiller") between his alleged onset date, September 11, 2006, and his date last insured, March 31, 2007.

Dr. Becker examined plaintiff on September 12, 2006, after plaintiff aggravated "his underlying degenerative disc disease" while moving a tank at work. Tr. 875. Dr. Becker noted that plaintiff's "back is quite stiff and range of motion is

12

limited[]" and that "[n]eurologically reflexes are absent at the knee and the ankle[,]" but he determined that plaintiff "may continue working." Tr. 875. Dr. Becker had a follow-up appointment with plaintiff on October 11, 2006, and noted that plaintiff "continues to have pain in his lower back with severe radiation down his left leg." Tr. 660. He opined that plaintiff had a "L4-5 disk herniation[]" and referred plaintiff to Dr. Druckemiller for an evaluation. Id. Dr. Becker wrote that plaintiff had a "light work capacity." Id.

On October 16, 2006, Dr. Druckemiller evaluated plaintiff and wrote: "Given the size of the disc herniation, severity of the problem and five weeks without improvement, surgery is a reasonable option for him." Tr. 636. Dr. Druckemiller indicated that plaintiff was unable to work because of "impending disc surgery[.]" Tr. 637. On January 3, 2007, Dr. Druckemiller opined that plaintiff should have surgery for his disc herniation and stated that plaintiff "continues to have significant pain on a constant twenty-four hour basis." Tr. 634. Dr. Druckemiller noted on January 22, 2007, that plaintiff "continues to have pain" and that his "[s]ymptoms have been persistent[.]" Tr. 639. On January 31, 2007, Dr. Druckemiller estimated that plaintiff's "range of impairment would probably be about 20%." Tr. 632.

On February 8, 2007, Dr. Druckemiller performed a "hemi-laminectomy, diskectomy L5-S1, left" on plaintiff. Tr. 521; see

13

also Tr. 522. He then had a follow-up appointment with plaintiff on March 5, 2007, at which time he noted that plaintiff "had improvement of his preoperative pain but has also developed a new pain." Tr. 687. He also noted that plaintiff "has restricted motion of the back, normal gait, strength and coordination." Id. On March 12, 2007, Dr. Druckemiller indicated that plaintiff was unable to return to work due to the surgery. See Tr. 688. On March 26, 2007, Dr. Druckemiller noted that plaintiff "is having continued leg pain[]" and found that he "has restricted ROM, slight antalgic gait, normal strength and coordination." Tr. 642. He wrote that plaintiff was unable to work because of back and leg pain. See Tr. 643.

The record contains two letters that Dr. Becker sent to plaintiff's counsel assessing plaintiff's alleged disability. Dr. Becker wrote a letter dated March 19, 2013 ("March 19, 2013, Letter"), stating that "on the basis of the structural problems that [plaintiff] has with his back, ongoing pain and inability to obtain any meaningful employment within his limitations over the past 5-6 years, that he should qualify for Social Security Disability Benefits." Tr. 862. Dr. Becker wrote a second letter dated April 1, 2013 ("April 1, 2013, Letter"), which stated that plaintiff "remains essentially disabled from substantial gainful employment due to his chronic pain and dependency upon narcotic medications for pain control." Tr. 861.

In his decision, ALJ Alger stated that "[a]ll medical opinions were carefully considered and weighed." Tr. 17. He further explained that he accorded the opinions of the State consultative professionals some weight,[4] but found that the "[o]rthopedic and neurosurgical records better support a finding that the claimant's residual radiculopathy would have limited his ability to stand and walk during the relevant period and that he would have required the ability to alternate between sitting and standing." Id. However, ALJ Alger did not assign weight to any of Dr. Becker's or Dr. Druckemiller's opinions. Indeed, ALJ Alger made no reference to either Dr. Becker's March 19, 2013, Letter or his April 1, 2013, Letter. He also did not mention that Dr. Druckemiller indicated that plaintiff was unable to work on October 16, 2006, see Tr. 637, March 14, 2007, see Tr. 641, and March 26, 2007, see Tr. 643.

Plaintiff argues that "[t]he ALJ reached a conclusion regarding the Plaintiff's residual functional capacity that was

---

[4] Although ALJ Alger refers to the "opinions of the State agency consultants[,]" Tr. 17, the record reflects just one such opinion. The Disability Determination Explanation at the initial level states: "No RFC/MRFC assessments are associated with this claim." Tr. 120. At the reconsideration level, Dr. Joseph Connolly, Jr., determined that plaintiff could, inter alia: "[o]ccasionally ... lift and/or carry ...: 20 pounds[;]" "[f]requently ... lift and/or carry ...: 10 pounds[;]" "[s]tand and/or walk (with normal breaks) for a total of: About 6 hours in an 8-hour workday[;]" and "[s]it (with normal breaks) for a total of: About 6 hours in an 8-hour workday[.]" Tr. 127.

inconsistent and at odds with the reports from the Plaintiff's doctors, and therefore, the ALJ did not give special evidentiary weight to said reports." Doc. #21 at 7. Plaintiff further contends that the ALJ failed to consider the factors required by the Regulations in "determining how much weight to assign to the reports from Plaintiff's doctors." Id. at 8. Specifically, plaintiff argues that the ALJ erred by failing to consider Dr. Becker's March 19, 2013, Letter and April 1, 2013, Letter. See id. at 5 (citations omitted). Defendant contends that the ALJ "extensively considered the evidence from Dr. Becker that was relevant to the period through the March 31, 2007 date last insured[,]" and that "the evidence from Plaintiff's doctors from and near the relevant period at issue supports the ALJ's decision." Doc. #23-1 at 6, 8.

A treating source's opinion is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §404.1527(c)(2). If the treating physician's opinion is not supported by objective medical evidence or is inconsistent with other substantial evidence in the record, the ALJ need not give the opinion significant weight. See Poupore, 566 F.3d at 307. If a treating source's opinion is not given controlling weight, "SSA regulations require the ALJ to consider several

factors in determining how much weight the opinion should receive." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015). "To override the opinion of the treating physician, ... the ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." Id. (citation omitted). "After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." Id. (internal quotation marks and citation omitted). However, a "slavish recitation of each and every factor" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013).

ALJ Alger failed to properly evaluate the opinions of Dr. Becker and Dr. Druckemiller under the treating physician rule in multiple respects. First, an ALJ is required to "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citations omitted). However, ALJ Alger did not mention, much less assign weight to, Dr. Becker's March 19, 2013, Letter; Dr. Becker's April 1, 2013, Letter; or Dr. Druckemiller's opinions that plaintiff was unable to work.

The ALJ's failure to discuss and weigh these opinions is a sufficient basis for remand. See Reich v. Astrue, 892 F. Supp. 2d 466, 469 (W.D.N.Y. 2012) ("[T]he ALJ's failure to ever mention or discuss [a treating physician's] May 27, 2007 opinion is an error of law which requires that the matter be remanded."); Norman v. Astrue, 912 F. Supp. 2d 33, 42 (S.D.N.Y. 2012) (finding the ALJ's failure "to mention the weight" given to a treating physician's opinion was sufficient basis for remand).

Second, ALJ Alger failed to provide good reasons for not crediting the opinions of plaintiff's treating physicians, and failed to consider the factors required by the Regulations. These failures also constitute sufficient grounds for remand. See Norman, 912 F. Supp. 2d at 42 ("The failure of the ALJ to provide 'good reason' for not giving [the treating physician's] opinions controlling weight, to mention the weight his opinions were given, and to apply the factors set forth in the regulations are sufficient grounds for remand."); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.").

Defendant contends that the ALJ did not err by failing to discuss Dr. Becker's 2013 letters because "evidence from after the relevant period is generally of little, if any, probative

18

value[]" and because "they are statements on an issue reserved to the Commissioner[.]" Doc. #23-1 at 7. However, Dr. Becker's March 19, 2013, Letter is retrospective to the relevant period, as it discusses plaintiff's limitations and symptoms "over the past 5-6 years[.]" Tr. 862. "[W]hile a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence." Byam v. Barnhart, 336 F.3d 172, 183 (2d Cir. 2003) (quotation marks and citations omitted).

More importantly, the fact that there may have been reasons to discount the treating physicians' opinions does not relieve the ALJ of his obligation to discuss the opinions and assign them weight. See Snell, 177 F.3d at 134 ("Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decision makers from their obligation ... to explain why a treating physician's opinions are not being credited."). Moreover, the Court cannot accept defendant's post hoc rationalizations of the ALJ's decision. See McAllister v. Colvin, 205 F. Supp. 3d 314, 333 (E.D.N.Y. 2016) (rejecting arguments "that the ALJ was correct in not assigning significant weight to" the treating physician's opinion "because it was made after plaintiff's date

last insured[]" and "does not relate to the relevant period[]"
as "impermissible post hoc rationalizations by the Commissioner"
because the ALJ did not offer these explanations for discounting
the opinion); Snell, 177 F.3d at 134 ("A reviewing court 'may
not accept appellate counsel's post hoc rationalizations for
agency action.'" (quoting Burlington Truck Lines, Inc. v. United
States, 371 U.S. 156, 168 (1962))). Therefore, ALJ Alger erred
by failing to weigh the opinions of plaintiff's treating
physicians. See Cottrell v. Colvin, 206 F. Supp. 3d 804, 809–10
(W.D.N.Y. 2016) (The "ALJ was still obligated to explain why he
refused to credit" the treating physician's opinion even though
the treating physician "opined on an issue reserved solely to
the Commissioner.").

Finally, defendant contends that "the evidence from
Plaintiff's doctors from and near the relevant period at issue
supports the ALJ's decision." Doc. #23-1 at 8. However, the
Court is not persuaded that the ALJ's decision is supported by
substantial evidence. There is significant evidence in the
record that suggests plaintiff may have been under a disability
before his date last insured of March 31, 2007, including Dr.
Druckemiller's opinions indicating that plaintiff was unable to
work between October 16, 2006, and March 26, 2007. See Tr. 637,
641, 643.

There is also evidence that suggests that plaintiff may have been disabled for a continuous period of at least twelve months between October 16, 2006, and November 16, 2007. See 20 C.F.R. §404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."). Following plaintiff's date last insured, Dr. Druckemiller noted that plaintiff continued to be in severe pain. See Tr. 644-45, 649. As a result, plaintiff had a second surgery on November 1, 2007. See Tr. 529. Although the record indicates that plaintiff's symptoms improved following the second surgery, Dr. Becker noted on November 16, 2007, that plaintiff remained disabled from work. See Tr. 662. Therefore, the Court does not find that substantial evidence supports ALJ Alger's decision.[5]

---

[5] The Court notes that to be entitled to benefits, plaintiff would have to have had a continuous disability until at least August 23, 2010. See Tr. 291; 20 C.F.R. §404.315(a)(3). However, this issue is beyond the scope of the Court's review, as ALJ Alger did not address this issue in his decision. See Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) ("It is not the function of a reviewing court to decide de novo whether a claimant was disabled or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations." (quotation marks and citations omitted)).

Accordingly, the Court finds that remand is appropriate due to ALJ Alger's failure to comply with the treating physician rule. On remand, the ALJ is directed to consider and weigh all opinion evidence in accordance with the Regulations.

## VI.   <u>CONCLUSION</u>

In light of these findings, the Court need not reach the merits of plaintiff's remaining arguments.[6] Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling, in which the ALJ reconsiders the administrative record, weighs the evidence, holds another hearing if necessary, and issues a new decision in which he explains his findings with specificity. Therefore, plaintiff's Motion for Reversal or Remand of Commissioner's Decision is **GRANTED**, to the extent plaintiff seeks a remand for further administrative proceedings. **[Doc. #21].** Defendant's Motion for an Order Affirming the Commissioner's Decision is **DENIED. [Doc. #23].**

SO ORDERED at New Haven, Connecticut, this 6th day of September, 2018.

                                   /s/
                                   _____
                                   HON. SARAH A. L. MERRIAM
                                   UNITED STATES MAGISTRATE JUDGE

---

[6] The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand.